UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE GREGORIO SOSA CARDONA | No. 25 CR 129<br><br>Honorable Sunil R. Harjani |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR REVIEW OF DETENTION ORDER**

Now comes the UNITED STATES OF AMERICA, by ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, and in response to defendant JOSE GREGORIO SOSA CARDONA's Motion for Review of Detention Order, respectfully states as follows.

**Background**

On March 6, 2025, a grand jury returned its indictment against defendant charging him with conspiracy to defraud the United States and violate 18 U.S.C. § 1546(a), in violation of 18 U.S.C. § 371 (Count I); presentation of false documents to United States Citizenship and Immigration Services ("USCIS"), in violation of 18 U.S.C. § 1546(a), paragraph 4 (Counts 2 through 5); using a document knowing that it contained a false, fictitious, or fraudulent statement or entry, in violation of 18 U.S.C. § 1001(a)(3) (Count 6); and knowingly and willfully falsifying, concealing, and covering up a material fact, in violation of 18 U.S.C. § 1001(a)(1) (Count 7).

On March 10, 2025, defendant was arraigned before United States Magistrate Judge Heather McShain. Dkt. 5. The government moved for detention based upon risk of flight and risk of obstruction under 18 U.S.C. §§ 3142(f)(2)(A) and (f)(2)(B), and a detention hearing was scheduled for March 12, 2025.

At the detention hearing on March 12, 2025, the government proffered evidence and submitted 12 exhibits in support of its position.[1] At the conclusion of the detention hearing, the Magistrate Judge took the matter under advisement and continued the hearing to the following day, to allow for further review of the exhibits and consideration of the parties' arguments. Exhibit A at 49.

### March 13, 2025, Oral Ruling on Detention

On March 13, 2025, the Magistrate Judge heard additional argument, and then announced her decision, analyzing the factors of 18 U.S.C. § 3142(g) and explaining the bases for her conclusion that detention was necessary to reasonably assure defendant's appearance.[2] What follows is a general summary of the Magistrate Judge's findings and conclusions, which can be found on pages 7 through 23 of Exhibit B.

In examining the nature of the alleged offense, the Magistrate Judge determined that this factor supports detention. Exhibit B at 10. The alleged conspiracy is vast, involving hundreds of fraudulent immigration applications, forged

---

[1] A transcript of the audio recording of the detention hearing is Exhibit A. The government requests that Exhibits A.1 through A.12 be permitted to be filed and remain under seal given the sensitive nature of their contents.

[2] A transcript of the audio recording of the March 13, 2025, hearing is Exhibit B to this response.

signatures of law enforcement, and defendant impersonating an attorney with a fake Ohio bar card, including on at least two occasions at USCIS offices.[3] *Id*. at 10-11. The government presented evidence of obstruction occurring in the immediate aftermath of the executions of search warrants at defendant's business premises, which included defendant's attempt to influence an employee, destroy contents of email accounts and a phone, wipe a computer, and instruct an employee that he knew nothing. *Id*. at 11. *See also*, Exhibits 3, 4, 5.

The Magistrate Judge concluded that the weight of the evidence supports detention, but noted that this factor was afforded the least weight in her overall analysis. *Id*. at 12.

The Magistrate Judge found deferndant's history and characteristics to be mixed, in that some supported release, while others supported detention. *Id*. at 12. Defendant has family in the Northern District, including his spouse, three children, his mother and a brother. *Id*. But defendant also has a lot of ties abroad, including his father who resides in Venezuela or Spain, as well as a potential girlfriend and potential child, and cousins in Columbia. The Magistrate Judge noted that these findings were drawn from the government's proffer as well as Exhibit 10 (email correspondence between defendant and Individual AP); Exhibit 11 (border crossing records); and Exhibit 12 (Customs and Border Protection contact reports recording

---

[3] Evidence of defendant's impersonation of an attorney was proffered and was contained in Exhibit 1 (which is a Form G-28 appearance form to which a scan of the fraudulent bar card and SOSA's Illinois driver's license were attached) and Exhibit 2 (which is a photograph of SOSA at USCIS offices with his client on April 17, 2024). These exhibits are particularly relevant because SOSA has denied that he was at the USCIS offices on April 17, 2024, and instead contends that someone appeared there and *impersonated him* (SOSA) *impersonating* an attorney.

3

defendant's statements upon return from select travels). The Magistrate Judge found that defendant had steady employment, but noted that it was through this self-employment that the alleged conspiracy was perpetrated. *Id*. at 13. The Magistrate Judge noted that defendant is a legal permanent resident of the United States, but also noted that Exhibit 5 showed defendant was notified as of January 13, 2025, that his application for naturalization was going to be denied. *Id*. The Magistrate Judge noted that the government's Exhibits 10, 11, and 12 showed substantial international travel and significant ties in other countries. *Id*. The Magistrate Judge credited that defendant had appeared in his only prior criminal case, a misdemeanor matter in Bucks County, Pennsylvania, where defendant was released and performed on bond without issue. *Id*. at 14.

The fourth of the § 3142(g) factors, danger to the community, was inapplicable because the government was moving for detention on risk of flight only. *Id*.

The Magistrate Judge noted that Pretrial Services recommended an extensive list of proposed conditions, including that defendant's wife serve as a third-party custodian and that defendant not be permitted to possess any internet capable devices.[4] *Id*. at 15. The Magistrate Judge noted that this is a nonviolent case involving a defendant with a minor criminal history and ties to the United States. *Id*. The Magistrate Judge went on to observe that the government's evidence showed that the defendant used manipulation in virtually every aspect of his life, to a degree she had not seen before, observing that "[i]t is a constant and broad pattern." *Id*. at 16.

---

[4] This recommended condition was based on the presence of suspected child sex abuse material on defendant's computer that was located following the search on November 21, 2024.

4

The Magistrate Judge concluded that defendant is "unsupervisable" based on the record, which included: (1) the alleged fraud and lies involved in the charged offenses;[5] (2) the defendant's alleged obstruction following the searches of his offices; (3) defendant's then-recent response to USCIS's notice of intent to deny his naturalization application, where defendant made a number of false representations at a time that he knew he was under criminal investigation;[6] and (4) the elaborate deception the defendant perpetrated upon his own wife – *the individual he proposed to be his third-party custodian*– which included defendant impersonating a real attorney and causing his wife to create an affidavit in support of a non-existent criminal prosecution that she believed to be against defendant's girlfriend.[7] *Id*. at 17.

The Magistrate Judge concluded that defendant's wife would be unable to effectively monitor defendant, explaining:

---

[5] The government proffered that defendant held himself out as an attorney to clients and his own employees, and charged thousands to prepare and file asylum and other applications for immigration benefits. Defendant made up backstories for clients' applications, and fabricated medical, police, and other reports to corroborate the fraudulent backstories.

[6] For example, in February 2025, defendant continued to deny that he had appeared and impersonated an attorney at the USCIS offices on April 17, 2024, even after defendant was identified by the hearing officer as the individual who appeared on that date and presented an Illinois driver's license and Ohio bar card bearing defendant's name, and after a photograph of defendant in the office on April 17, 2024, *and even after* law enforcement executed searches of defendant's office and seized ID printer that he had used to create the fake Ohio bar card, as well as the shred bin containing shredded (fake) California and Ohio bar cards with defendant's name. Despite all this, defendant chose to challenge USCIS's notice of intent to deny naturalization by submitting a response wherein he claimed that he could not have been the individual at USCIS offices because he was with his father at a medical appointment.

[7] Upon getting caught in an extensive extramarital affair, defendant convinced his wife that he was a participant in the affair against his will, and that the woman who forced him to do this was being criminally prosecuted for her actions in Texas. Defendant set up an internet domain and email address to mimic a real attorney in California, and then used this email (as well as an email he created for a purported assistant to the attorney) to communicate with his own wife and convince her that she was needed as a witness for the purported criminal case against the girlfriend in Texas. *See* Exhibits 7 and 8.

5

> The Court acknowledges Mrs. Sosa's willingness to take the podium yesterday and answer the Court's questions. I also just want to underscore, I commend her devotion to her children and her willingness to house and support Mr. Sosa if he were to be released. And the Court has no doubt that Mrs. Sosa is very well intentioned. But I had the opportunity to question Mrs. Sosa and to observe Mrs. Sosa during that Q and A. And again, while I have no doubt that Mrs. Sosa comprehends, you know, on a technical level the role of a third-party custodian, and I also acknowledge that she said she would attempt to monitor Mr. Sosa, and this is a quote, as best as I am able to, end quote, when she was pushed about the lies and deceit that Mr. Sosa is alleged to have employed on her, when I asked her why she thought she could monitor Mr. Sosa, she responded that with an answer along the lines of, that her children are her priority. She emphasized what an important role Mr. Sosa plays in their lives and that she thought that it was her responsibility to promote and continue that relationship while she can.
>
> Again, this Court commends Mrs. Sosa for prioritizing her children, and it is also an understandable and noble priority, but that was not responsive to the question with respect to why she believed that she could monitor Mr. Sosa.

Exhibit B at 18-19.

In summation, the Magistrate Judge noted that defendant has (1) the financial means to flee;[8] (2) ties outside of the United States; (3) awareness that his application for U.S. citizenship will be denied; and (4) awareness that he is under investigation for possession of child pornography. *Id*. at 20. Additionally, the Magistrate Judge noted that defendant "is clearly adept at forging documents, official signatures, working with computers, and the internet." *Id*. at 20-21. The Magistrate Judge acknowledged defendant's argument that he did not flee during the time that elapsed between the November 21, 2024, search of his offices, and his March 10, 2025, arrest

---

[8] Defendant reported to Pretrial Services that he earns $400,000 per year. The government proffered defendant's reported gross revenues from his immigration business were $1,051,000 in 2023, and $1,048,000 in 2022, in addition to several hundred thousand a year in translation fees beyond that, with the translation business intertwined with the alleged immigration fraud conspiracy. *See* Exhibit A at 14.

6

on the then-sealed indictment in this case. *Id.* at 21. This argument was not what it might seem, however, because defendant expected that he was going to be able to self-surrender. *Id*. at 22. Defense counsel had a conversation with the government shortly after the November 21, 2024, searches, and requested that he be permitted to self-surrender. The government ultimately elected not to provide this notice after the evidence of child pornography and obstruction began to develop. *Id*. Moreover, part of defendant's calculus not to flee following the search may have been that he thought his extensive obstruction efforts were more successful than they actually were. *Id*.

**Argument**

This Court should adopt the Magistrate Judge's earlier ruling and order the defendant detained pending trial. The existing record demonstrates the dishonesty and fraud that pervades nearly all of defendant's personal and professional affairs, for the consistent purposes of personal gain and avoidance of consequences. Defendant's persistent effort to avoid consequence, combined with his foreign contacts, financial wherewithal, diminishing connections to the United States, and general character for deception, present a substantial risk of non-appearance.

Defendant's Motion fails to acknowledge the record on which the Magistrate Judge reached her determination, and, indeed, the Motion confuses the findings. For example, the Magistrate Judge did not find that the defendant obtained his legal permanent residency status unlawfully or that he "would be subject to removal or deportation after a period of incarceration." *See* Motion, ¶ 2. The record would *allow* a factfinder to conclude that defendant obtained his legal permanent residency status

7

unlawfully – he obtained it through an invalid marriage (defendant being married to another woman at the time he married his current wife)[9] – and could logically infer that defendant's status in this country was susceptible to adjustment on account of that fact, but the Magistrate Judge made no such finding and did not premise detention on such a finding.

Defendant's Motion appears to possibly contest that Individual AP is, or was, defendant's girlfriend in Columbia, and the Motion clearly disputes that defendant is the father of Individual AP's young child. Motion, ¶ 5. But even if this were all true, and defendant's relationship with Individual AP was platonic and simply misunderstood, that does not meaningfully lessen defendant's foreign contacts. Defendant has extensive international travels, and by his own admission, has had a girlfriend from Venezuela whom he met on at least one of his trips in Columbia. *See* Exhibit 12, p. 8 (November 12, 2022, CBP contact where defendant informs he met with his Venezuelan girlfriend on the trip to Columbia that he was returning from).

The Motion contends that "the Magistrate Judge held that defendant's prior attempts to evade law enforcement were a reason for his continued detention" and then ties this supposed holding to the 2013 misdemeanor case in Bucks County, Pennsylvania. *See* Motion, ¶ 6. This is not correct. As noted in the preceding section, the Magistrate Judge *credited* defendant for his previous appearances in the 2013 case. *See* Exhibit B at 14.

---

[9] During defendant's naturalization interview, defendant was confronted with the simultaneous marriages, and specifically told that his adjustment of status (from removal proceedings to lawful permanent resident based on his marriage to his current wife) was unlawfully obtained. See Exhibit 9, p. 12.

Defendant's Motion ignores significant evidence that was presented during the detention hearing. The defendant tells this Court that he is in a "bona fide marriage with a United States citizen," and notes that "DHS has not attempted to take away his residency." Motion, ¶ 8. However, defendant certainly recognizes the tenuous premises of his status, which is presumably why he continued to lie to USCIS as recently as February 2025 contending that Montgomery County, Ohio, had no record of his first marriage, when, defendant himself had obtained a certified abstract of that record in October 2024, which was seized as evidence from his office during the search on November 21, 2024. Defendant appears to have *tried not to obtain the record* – misspelling his first wife's name, and subtly confusing the date of marriage in his request form – but the clerk of Montgomery County nonetheless found it for him, sent it to him, and he took it to his office, where it remained until it was seized on November 21, 2024 pursuant to a search warrant. *See* Exhibit A at 25-26. Remarkably, this did not dissuade defendant from thereafter contesting USCIS's notice of intent to deny his naturalization application by yet again contending that there was no record in Montgomery County that he had ever been married to his first wife. *See* Exhibit 6 at 19.

Defendant proposes to offer additional testimony from his current wife and their nanny, who defendant submits can serve as third-party custodians. First, the nanny is a witness to potential criminal offenses that may be charged in a superseding indictment.[10] Second, there is no reason to believe that defendant's

---

[10] The individual has previously been interviewed by law enforcement. Early production of the memorandum of interview was recently tendered to defense.

9

employee would be capable of ensuring his compliance with any conditions of release. Third, the problem is not with any particular, potential custodian, but with the defendant, who has shown through his pervasively dishonest and manipulative actions, that he is simply not supervisable.

The government respectfully requests that the Court order defendant detained pending trial.

                                      Respectfully submitted,

                                      ANDREW S. BOUTROS
                                      United States Attorney

By:   /s/ *Jeffrey S. Snell*
       JEFFREY S. SNELL
       Assistant U.S. Attorney
       219 South Dearborn St., Rm. 500
       Chicago, Illinois 60604
       (312) 469-6308

Dated: May 22, 2025