1    **TRANSCRIBED FROM DIGITAL RECORDING**

2                    IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
3                          EASTERN DIVISION

4    UNITED STATES OF AMERICA,              )
                                            ) Case No. 25 CR 129
5              Plaintiff,                   )
                                            )
6         vs.                               )
                                            )
7    JOSE GREGORIO SOSA CARDONA,            ) March 13, 2025
                                            ) Chicago, Illinois
8              Defendant.                   ) 1:01 P.M.

9       TRANSCRIPT OF PROCEEDINGS - Telephonic Detention Hearing
                            (Continued)
10     BEFORE THE HONORABLE HEATHER K. McSHAIN, Magistrate Judge

11   APPEARANCES:

12   For the Government:        HON. MORRIS PASQUAL
                                219 South Dearborn Street
13                              Chicago, Illinois  60604
                                BY:  MR. JEFFREY S. SNELL
14
     For the Defendant:        MR. JACOB S. BRISKMAN
15                              2054 North California Avenue
                                Suite 1R
16                              Chicago, Illinois  60647

17   ALSO PRESENT:             Ms. Diamond Bert
                               Pretrial Service Officer
18

19

20

21                    PAMELA S. WARREN, CSR, RPR
22              Official Court Reporter - Retired
                       23869 N. High Ridge Drive
23                Lake Zurich, Illinois   60047
                            312.823.0001
24

25   NOTE:  Please notify of correct speaker identification.

1    (Proceedings held in open court:)

2         THE CLERK:  25 CR 129, USA versus Jose Gregorio Sosa

3    Cardona, for continued detention hearing.

4         THE COURT:  Good afternoon.  Counsel, please state

5    your appearance for the record, beginning with the government.

6         MR. SNELL:  Good afternoon, your Honor.  Jeff Snell

7    for the United States.

8         THE COURT:  Thank you.

9         For the defendant.

10        MR. BRISKMAN:  Good afternoon.  Jacob Briskman on

11   behalf of the defendant.

12        THE COURT:  Because -- because we're appearing

13   telephonically, I also just want to confirm that the defendant

14   is on the line.  Mr. Sosa, could you just confirm your presence

15   by stating I am here.

16        THE DEFENDANT:  I am here, your Honor.

17        THE COURT:  Thank you.  Thank you, Mr. Sosa.

18        And then for pretrial, please.

19        MS. BERT:  Good afternoon, your Honor.  Diamond Bert

20   with pretrial services.

21        THE COURT:  Thank you, Officer Bert.

22        We are here for the continued detention hearing in

23   order that -- well, as I stated yesterday, the Court needed

24   more time to review the voluminous government exhibits and also

25   to consider the arguments that were made at the lengthy

1  detention hearing, and I am prepared to put my ruling on the

2  record.

3        I just want to confirm we're proceeding

4  telephonically.  And Mr. Briskman, we are proceeding

5  telephonically just for ease of scheduling, but I just want to

6  confirm that Mr. Sosa does waive in-person hearing today in

7  order for me to place my findings and ruling on the record; is

8  that correct?

9        MR. BRISKMAN:  That's correct, your Honor.

10        THE COURT:  Okay.  Also --

11        MR. BRISKMAN:  Your Honor --

12        THE COURT:  -- if any caller -- yes.  Go ahead.

13        MR. BRISKMAN:  Yes.  Jacob Briskman on behalf of the

14  defendant.

15        Your Honor, I filed a supplement this morning in

16  support of our request for release.

17        THE COURT:  Which I have not seen.  Okay.

18        Has the government reviewed it?

19        MR. SNELL:  I did, your Honor.  I looked at it.  It is

20  a printout from the Pennsylvania case in 2013.

21        THE COURT:  Could everyone just hold the line while I

22  bring this up?

23     (Brief interruption.)

24        THE COURT:  Okay.  Thank you for flagging this,

25  Mr. Briskman.  And I -- I just reviewed this.  It is a one-page

1    filing as far as the substance of it.  And then there is an

2    exhibit, which is Court of Common Pleas of Bucks County with a

3    criminal docket.  And this is filed on the docket in this case

4    at Docket Entry 11.

5          So Mr. Briskman understood with respect to the point

6    that's made here that the defendant did post bond in that case.

7    No indication that he failed to appear in any of those court

8    dates.  And I'll also note paragraph 2 of that page also saying

9    that the defendant is amenable to stricter conditions that

10   further mitigate risk of flight, such as curfew or GPS

11   monitoring.  So (unintelligible).

12          Is there anything else to say on that point,

13   Mr. Briskman?

14          MR. BRISKMAN:  No, your Honor.

15          THE COURT:  Okay.  Mr. Snell, is there anything you

16   want to say in response to that filing?

17          MR. SNELL:  No, your Honor.  The -- except for with

18   respect to GPS monitoring and curfew.  The government just

19   doesn't view that as something particularly helpful to curb

20   risk of flight because by the time a GPS bracelet is cut, a

21   person would have made, you know, some progress in wherever

22   they are headed to.  So it is -- it doesn't directly address

23   the concern from the government's perspective.

24          THE COURT:  Understood, Mr. Snell.

25          Okay.  I am prepared to rule.  I am hearing a lot of

1    background noise, and I feel it is coming (unintelligible).

2              THE CLERK:  Judge, Judge --

3              THE COURT:  This is coming from --

4              THE CLERK:  Judge, this is the courtroom deputy.

5    There is an officer in the room with Mr. Sosa and just had him

6    remove the headphones and stand up, so I don't think he hears

7    what's happening.  And they just removed Mr. Sosa.

8              THE COURT:  I don't understand the point you're

9    making.

10             THE CLERK:  This is Peggy, the courtroom deputy.  The

11   officer just removed Mr. Sosa from the room where he was

12   listening, so he's no longer a part of the hearing.

13             THE DEFENDANT:  I'm here.

14             THE COURT:  Mr. Sosa, are you on the line?

15             THE DEFENDANT:  Yes, I am.

16             THE CLERK:  Oh, I apologize.  It was --

17             THE COURT:  Okay.

18             THE CLERK:  It was a defendant for a later hearing

19   that he had already -- had been brought in too early.  My

20   apologies.

21             THE COURT:  Okay.  Mr. Sosa, I just want to confirm

22   you can hear what I am saying right now?

23             THE DEFENDANT:  Now I can, your Honor, yes.

24             THE COURT:  Okay.  Did you hear the earlier part?  I

25   mean --

1      THE DEFENDANT:  Yes, I did, your Honor.

2      THE COURT:  I mean, you did you have headphones?

3      THE DEFENDANT:  I don't have any headphones, your

4  Honor.

5      THE COURT:  There is a lot of background noise and

6  what I am trying to figure out if that's coming from the room

7  that you're in, Mr. Sosa.  Is it quieter now in the location

8  where you're at?

9      THE DEFENDANT:  It is quieter.  There is a door.  I'm

10  going to try to shut it.  Let me see.  Okay.

11      All right.  The door is shut, your Honor.

12      THE COURT:  Okay.  I'm going to then proceed with my

13  ruling on the record as follows.  So we are here on the

14  government's motion to detain the defendant Jose Gregorio Sosa

15  Cardona, who I'm going to refer to as Mr. Sosa in this ruling.

16      The government moves to detain Mr. Sosa and also moves

17  for a detention hearing.  And the Court found that the

18  government has met its burden for a detention hearing pursuant

19  to 18, United States Code, Section 3142(f)(2)(A) and (B) for

20  the reasons that were proffered by the government at the

21  initial appearance in this case.

22      And the government seeks to detain Mr. Sosa based on a

23  serious risk of nonappearance.  In its report of March 12th,

24  2025, pretrial services recommends release and details on the

25  last page of that report (unintelligible) the proposed

1    conditions that pretrial is recommending.

2          This Court having reviewed and considered the evidence

3    presented to include the pretrial services report and

4    recommendation of release, having heard argument from both

5    parties on this matter at the detention hearing that occurred

6    yesterday, on March 12, 2025, as well as consider

7    (unintelligible) of the Government Exhibits 1 through 12, as

8    well as the supplemental brief filed by the defense, which I

9    just reviewed today which appears at Docket 11, the Court has

10   considered the supplemental brief from the defense as well, in

11   addition to very minimal but the additional argument made today

12   on the record in response to that supplemental brief, as well

13   as the Court having the benefit of the recording of

14   yesterday's detention hearing, which I was able to review again

15   this morning in preparation for this ruling.  Based on all of

16   that review, the Court -- in consideration, the Court makes the

17   following findings of facts and conclusion of law.

18          The defendant has been charged -- so let me start with

19   the charges.  Defendant has been charged in a seven count

20   indictment.  Count One alleges a conspiracy to defraud the

21   United States and commit offenses against the United States in

22   violation of Title 18, United States Code, Section 371.

23          Counts Two through Five allege fraud and misuse of

24   visas, permits, related documents in violation of Title 18,

25   United States Code, Section 1546(a), paragraph 4.

1      Count Six alleges making false statements in violation

2  of Title 18, United States Code, Section 1001(a)(3).

3      And then Count Seven alleges making -- a charge of

4  making false representations in violation of Title 18, United

5  States Code, Section 1001(a)(1).

6      (Unintelligible) the Bail Reform Act, so in

7  considering the government's motion for detention, the Court is

8  guided by several principles.  At all times the defendant is

9  entitled to the presumption of innocence.  Nothing that the

10  Court sets forth in its findings today is intended or should be

11  considered to affect that presumption.

12      The purpose of this hearing is to determine whether,

13  notwithstanding that presumption of innocence, the defendant

14  should be detained or released pending trial.  Under the Bail

15  Reform Act a defendant must be released prior to trial unless

16  the Court finds that no condition or combination of conditions

17  exists that will reasonably assure the appearance of the

18  defendant as required or which will reasonably assure the

19  safety of any other person in the community.

20      I want to be clear that the government expressly

21  established yesterday that it is only moving under serious risk

22  of flight.  So as a result, this Court is not going to consider

23  this second prong with respect to safety of any other person in

24  the community.

25      With that, the act requires that the least restrictive

1   conditions be imposed that are necessary to provide this

2   reasonable assurance that the defendant will appear as

3   required.  If the Court cannot find that any condition or

4   conditions will reasonably assure the appearance of the

5   defendant as required, then the Court is required by the act to

6   order the defendant held in custody.

7        The burden of proof here falls on the government.  And

8   facts supporting the finding that no condition or combination

9   of conditions exists that could reasonably assure the

10   appearance of the defendant must be established by a

11   preponderance of the evidence.

12        I am guided by and now address -- I will need to turn

13   to the 3142(g) factors that the Bail Reform Act requires the

14   Court to consider.  And they are as follows:  The nature and

15   circumstances of the alleged offense, the weight of the

16   evidence against the defendant.  Although I note that under

17   Seventh Circuit case law the factor does carry the least

18   weight.  (Unintelligible) characteristics of defendant, which

19   include defendant's physical and mental condition, family ties,

20   employment, length of residency in the community, criminal

21   record, history of drug or alcohol abuse, record of appearance

22   at prior court proceedings, whether the defendant was on a

23   conditioned release of some sort at the time of the new alleged

24   offense, and finally the fourth factor is nature and

25   seriousness of the danger to any person or the community.

1    The Court has considered the evidence presented on

2    these factors as I already summarized the scope of what I have

3    considered, and I have also considered the recommendation of

4    pretrial services to release this defendant on conditions.

5    Based on the specific facts in this case and specific

6    consideration of this defendant, the Court finds that the

7    statutory factors enumerated in Section 3142(g) support

8    detention here of this particular defendant in this case.  That

9    the government has met its burden and the evidence presented

10   before this Court establishes by a preponderance that no

11   condition or combination of conditions could reasonably assure

12   the appearance of the defendant as required, and that no

13   condition or combination of conditions are available to

14   mitigate this risk of nonappearance.

15   I'm going to now put my findings on the record in

16   support of that ruling.

17   The nature of the alleged offense here supports

18   detention.  So this is a seven count indictment alleging a vast

19   conspiracy that occurred from March 2022 to November 2024 to

20   defraud the United States and to violate immigration laws.

21   There are allegations of false statements, false documents,

22   false representations, false applications made or caused to be

23   made by the defendant to USCIS.  Hundreds of false asylum

24   applications are at issue, as well as false I-918s.

25   Alleged by the government this includes

1   (unintelligible) forged signatures of law enforcement officers,

2   forged or made up signature of a fictitious FBI investigator

3   from Miami.  These allegations also involve that the

4   defendant -- or allegations of defendant impersonating an

5   attorney to include the utilization, creation of fake bar

6   cards, and appearing at USCIS on at least two occasions

7   impersonating an attorney with a fake Ohio bar card, and also

8   referring not only to the government's proffer and argument,

9   but also to the Government Exhibits 1 and 2.

10          Allegations here are expansive, and agents are still

11  putting the pieces together of this massive conspiracy in light

12  of the -- the utilization of a (unintelligible) team to review

13  all the electronics that were seized back in November.

14          There are also allegations here of obstruction.  And

15  some of this is supported in Government Exhibits 3, 4, and 5,

16  to include the defendant within hours of federal agents

17  entering his business the defendant attempting to influence

18  other employees, as well as destroy contents of email accounts,

19  phones, instructing employees to know nothing, and wipe a

20  computer clean.

21          And in addition, the defendant (unintelligible) of

22  this conspiracy.  So the nature of this alleged offense is

23  serious.  It supports detention.

24          The weight of the evidence against the defendant also

25  supports detention.  But I acknowledge, while Seventh Circuit

1   case law directs or controls here, that this is the least

2   important element or least weighty element.  But this is an

3   indicted case.  And given (unintelligible) you know, the

4   proffer of the government's evidence yesterday with respect to

5   the electronic evidence, the photographic evidence, there

6   is -- the weight of the evidence here does support detention.

7   But again, this is the least weighty factor in this Court's

8   analysis and findings here.

9           Turning to the history and characteristics of this

10  48-year-old defendant, they are as follows:  And the Court

11  acknowledges that some of these support release, but some of

12  these support detention.

13          Starting with defendant's physical and mental

14  condition, there is minimal physical issues as reported in the

15  pretrial services report.  There were mental health issues

16  reported as recently as May of 2024, but those can be dealt

17  with in custody or on release.  So the Court -- this just

18  doesn't move the needle with respect to detention, and so it is

19  not driving the decision here.

20          Family ties.  This is mixed.  So the defendant has a

21  wife, two children, a mother, a brother here in the Northern

22  District of Illinois.  He also has a third biological child

23  here in the Northern District of Illinois with his first wife

24  or first partner.

25          The defendant also has a lot of ties abroad to include

1    a father, according to pretrial services who resides in

2    Venezuela or Spain, and also through the government's proffer

3    there is potentially a girlfriend and a child, as well as

4    cousins, in Colombia.  And for that I'm drawing from exhibit --

5    Government Exhibit 10, as well as 11 and 12.

6          So that's mixed.  Again, there are significant family

7    ties here in this district, but there are significant ties

8    abroad as well.

9          With respect to employment, the defendant has been

10   self-employed, but -- and has a good employment record.  But

11   the problem is that this employment is alleged to have

12   (unintelligible) perpetuated the alleged conspiracy.  So, you

13   know, the employment here, you know, supports detention as far

14   as how he misused this for financial gain in order to

15   perpetuate this conspiracy.

16        With respect to length of residency in the community,

17   this is also part of a mixed assessment or a mixed factor here.

18   The defendant has been in Chicago since 2014 or 2015 according

19   to the pretrial services report and currently appears to be a

20   legal permanent resident.  But as of January 13, 2025, and this

21   is Government Exhibit 5, defendant was informed that USCIS is

22   denying his application for naturalization.  And again, I'm not

23   going to keep repeating this, but there is lots of

24   international travel and what appear to be significant ties in

25   other countries.  And again referring to Government Exhibit 10,

1    11, and 12.

2          With respect to history of drug or alcohol abuse,

3    there is really nothing to report.  So that factor is not

4    moving the needle toward detention and would support release.

5          Record of appearance at prior court proceedings,

6    criminal record, whether defendant was on some sort of

7    conditions or release at the time of the alleged offense.

8    There was a very minor criminal history, and the Court credits

9    the point that Mr. Briskman made in argument yesterday and also

10   what he then confirms today with this supplemental filing at

11   Docket 11 that while the defendant was extradited, he was

12   then -- at Bucks County, he was then put on bond and there is

13   no indication in this docket that there was any sort of bond

14   violation or issue with respect to how he performed on bond.

15   And I'll note that this is -- that that conviction is a

16   misdemeanor conviction and that it dates back to 2013.

17          The fourth factor, the nature and seriousness of any

18   danger posed to individuals in the community is not applicable

19   here given that, again, the government is not moving on risk of

20   flight.

21          So, you know, looking at all of those factors, the

22   Court again comes back to the language of the Bail Reform Act,

23   that if the Court cannot find any conditions that will

24   reasonably assure the appearance of the defendant as required,

25   then the Court is required by the act to order the defendant

1    held in custody.  And as I noted or as I stated, I do find that
2    the government has met its burden here.

3         When you look at pretrial services report at page 5,
4    there is an expansive list of proposed conditions to include
5    Melissa Sosa to serve as a third-party custodian.  Defendant
6    would not be permitted to either possess any devices with
7    internet capabilities and all internet capable devices in the
8    house would have to be password protected.

9         It also provided for the surrender of passports, which
10   Mr. Briskman indicated the defendant was prepared to do.  Not
11   obtain a passport or international travel document is another
12   condition.  Travel limited to the Northern District of
13   Illinois.  And there are other conditions listed as well.  And
14   the Court acknowledges that this is an expansive list.

15        But as I said yesterday when I continued this
16   detention hearing, I needed more time to review this record.
17   And in this Court's opinion, this is a very close call.  At a
18   very high level or a superficial multi -- this mattered.  This
19   is a white collar case.  It is a nonviolent case involving a
20   defendant with a minor criminal history and ties to the United
21   States.

22        But when you dig deeper into the argument made
23   yesterday by the government, the allegations contained in this
24   indictment, as well as these government exhibits, two things
25   became clear to this Court, and this is -- these two things are

1   driving the decisions here to grant the government's motion.

2   Acknowledging again, clearly that there is a presumption of

3   innocence, this record before this Court prevents the defendant

4   who employed (unintelligible) manipulations, literally in all

5   aspects of their life, both professional to perpetuate the

6   alleged offenses in the instant charged case, as well as his

7   personal life, to a degree that this Court has not seen before.

8   It is a consistent and a broad pattern.

9         And second, this is the defendant -- and this leads

10  the Court to its second point, that this just a defendant who

11  is unsupervisable based on this record.

12        First and foremost, I -- for those reasons, the Court

13  just has no level of confidence that defendant will abide by

14  any conditions the Court imposes.  And that's step one, that

15  the Court has to have some level of confidence that this

16  defendant is going to do what he says he will do and follow

17  Court-imposed conditions.

18        But based on this record, that's not supported.  Yet

19  that the defendant will, given the depth of -- and the depths

20  of fraud, alleged fraud and lies and the extreme measures that

21  have been employed by this defendant as alleged here, not only

22  in the conspiracy but also to obstruct the government

23  investigation and instructions to others to obstruct, and I --

24  and when you look at government -- also Government Exhibit 6,

25  7, 8 and 9, this goes into his (unintelligible).  So the steps

1   and measures taken with respect to countering USCIS's decision

2   on the naturalization applications and the (unintelligible)

3   explanation that the defendant perpetuated to USCIS with

4   respect to whether or not he was at USCIS impersonating an

5   attorney on April 17, 2024 are quite ordinary.

6          And looking at these various materials, it is -- it is

7   just a web of lies in furtherance of not only the alleged

8   crimes, but with respect to his own naturalization application.

9   But then even more so, to his wife who is the proposed third-

10  party custodian, to the point he is even alleged to have

11  impersonated a lawyer, Amiel Wade -- and I'm looking at

12  Exhibits 7 and 8. These are incredible reads. And defendant

13  was so proficient at lying that he managed to convince his

14  wife, his wife who he asked to (unintelligible) affidavit,

15  which appears at Exhibit 8 at pages 19 to 22 (unintelligible)

16  defendant want (unintelligible) impersonate this attorney, send

17  emails to his wife impersonating someone from this law firm and

18  deceive his wife to the point that she executed this affidavit.

19  That is manipulation and deceit with respect to the

20  third -- this proposed third-party custodian.

21          That same evidence leaves the Court to conclude that

22  this defendant is not supervisable, but also that Ms. Sosa

23  could not serve as a third-party custodian here, as proposed by

24  pretrial, to limit internet access and phone access.

25          And again, that affidavit that Mrs. Sosa was, you

1   know, manipulated into produc- -- allegedly manipulated into

2   producing reflects that Mr. Sosa is successful at lying and

3   manipulating his own wife and that he will go to extraordinary

4   measures to do so.

5           And he also, you know, did a lot of these -- these

6   actions with respect to his own naturalization application and

7   lies to USCIS, he did that while he was under investigation and

8   while he was (unintelligible) he knew very well that he was

9   under investigation by the United States with respect to a lot

10  of these statements that are contained in exhibit -- Government

11  Exhibit 6, 7 -- yeah, 6 and 7 -- I'm sorry.  I think I am off

12  by one exhibit.  Exhibit 6 and then Exhibit 9.

13          But some of these statements and representations and

14  submissions occurred while the defendant knew that he was under

15  federal investigation because they occurred -- some of these

16  occurred after the execution of the search warrant in November

17  of 2024.

18          The Court acknowledges Mrs. Sosa's willingness to take

19  the podium yesterday and answer the Court's questions.  I also

20  just want to underscore, I commend her devotion to her children

21  and her willingness to house and support Mr. Sosa if he were to

22  be released.  And the Court has no doubt that Mrs. Sosa is very

23  well intentioned.  But I had the opportunity to question

24  Mrs. Sosa and to observe Mrs. Sosa during that Q and A.  And

25  again, while I have no doubt that Mrs. Sosa comprehends, you

know, on a technical level the role of a third-party custodian, and I also acknowledge that she said she would attempt to monitor Mr. Sosa, and this is a quote, as best as I am able to, end quote, when she was pushed about the lies and deceit that Mr. Sosa is alleged to have employed on her, when I asked her why she thought she could monitor Mr. Sosa, she responded that with an answer along the lines of, that her children are her priority. She emphasized what an important role Mr. Sosa plays in their lives and that she thought that it was her responsibility to promote and continue that relationship while she can.

Again, this Court commends Mrs. Sosa for prioritizing her children, and it is also an understandable and noble priority, but that was not responsive to the question with respect to why she believed that she could monitor Mr. Sosa.

In addition, Mrs. Sosa works as a teacher, would possibly be away from the house for work leaving the defendant unsupervised. And this record underscores that this defendant will go to extraordinary means to lie to the government and to his wife. And also, you know, monitoring whether or not Mr. Sosa can get his hands on any sort of, you know, internet capable device, you would have to literally have eyes on him 24/7. And again, this record establishes that he has been quite successful at, you know, not being forthcoming, hiding, you know, large pieces of his life from his wife, and then also

1  affirmatively manipulating and lying to his wife.

2         In addition, this record reflects that defendant has

3  financial means to flee.  He has ties outside of the country.

4  He was recently on notice, as of January 13th, 2025, that he is

5  likely to have his naturalization application -- he has already

6  been notified that it has been denied, but it does not look as

7  though that that ship can be righted.  But he's at least on

8  notice of that January 13, 2025 notice.

9         The defendant was (unintelligible) included like his

10 attempt at citizenship is unraveling.  He knows, in addition to

11 the charged crime, he's now on notice that he's under

12 investigation for child -- for possession of child pornography.

13 If charges materialize there with respect to those allegations

14 for possession with each distribution of child pornography --

15 and again, I fully acknowledge this is uncharged conduct,

16 defendant is presumed innocent, but the government, if they are

17 able to make their charges against defendant, if they are able

18 and to pursue those charges, if the defendant is charged under

19 either statute, 2252(a) or 2251, I believe is the other

20 applicable statute for this type of charge, defendant will be

21 subject to significant penalties to include a five-year

22 statutory mandatory minimum that may be triggered.

23         There is substantial ties to Colombia here, to include

24 the possible girlfriend and child.  The many trips to Colombia,

25 approximately 16 in recent years.  And this is a defendant who

is clearly adept at forging documents, official signatures,
working with computers, and the internet.

And the Court understands the point made by defense
counsel that additional -- the suggestion that additional
conditions, such as curfew or GPS monitoring, could help
mitigate risk of flight.  Pretrial services has
(unintelligible) my understanding does not utilize GPS for risk
of flight, only for danger to the community and
(unintelligible).  Mr. Snell's point is it resonates with this
Court that I -- removal of an ankle -- of a GPS monitor, while
it will provide notice, I -- is not a sure thing with respect
to actually then getting the defendant back in custody.  And
that's typically a delay with respect to when that alert
happens and the investigation typically needed to find that
defendant.

And again step number one is that the Court has to
have confidence that this is a defendant who will abide by
Court-imposed conditions, and the Court just does not see that
on this record.

The strongest argument that the defense made and that
the Court considered seriously is this timeline that the
defendant knew that he was under investigation as of
November 21st, 2024 and he did not flee.  But the Court also
credits the government's explanation for why that defense
argument is not as strong as it might appear at first blurb.

1    First, the defendant believes that he would be given a heads-up
2    of an indictment.  And the government ended up not providing
3    that notice because of what it learned post search with respect
4    to these allegations of obstruction and the child pornography
5    on the electronic devices.  So the defendant was a
6    (unintelligible) it makes the appearance from this Court's
7    standpoint, you know, thought that he would at least have
8    notice before the indictment was returned.  It is also -- the
9    government also argued that the defendant may not -- may not
10   have known that his obstruction attempts had been unsuccessful
11   or in many aspects unsuccessful.
12           And then the third, with respect to defendant's
13   behavior with respect to behavior and conduct alleged after
14   receiving notification of intent to deny U.S. Citizenship
15   application, that the defendant is going to (unintelligible)
16   again of allegedly -- you know, the (unintelligible)
17   perpetuating and continually lies in what appears to be, you
18   know, from this Court's estimation given the photographic
19   evidence and eyewitness evidence, you know, continuing
20   perpetuation of lies and continuing what appears to be just an
21   unbelievable (unintelligible) with respect to someone
22   impersonating him, with respect to not knowing -- you know,
23   having read Exhibit 9, Government Exhibit 9, like it is
24   just -- it is just a pattern that the Court can't get past.
25           And so again, for all of these reasons, the government

1    has met its burden here.  And I -- the Court -- I -- while

2    there are some 3142(g) factors that would support release here,

3    and I again acknowledge this is a very minimal criminal history

4    and in that one misdemeanor conviction the defendant does not

5    have any record of failure to appear or not follow Court-

6    imposed conditions, the record presented to this Court really

7    underscores that the Court has no basis to believe that the

8    defendant himself will abide by any of these conditions and the

9    Court does not see how third-party custodian -- with this

10   proposed third-party custodian with whom the defendant lived

11   during the course of this alleged charged conspiracy and to

12   whom the defendant, you know, has employed this pattern of

13   lies, deceit, and manipulation, how Mrs. Sosa as a third-party

14   custodian possibly could effectively monitor this defendant

15   given the nature of the charges, the conduct, and the record

16   before this Court.

17          So for all of those reasons the Court -- I'm sorry --

18   grants the government's motion to detain and asks the

19   government to please prepare a detention order and run it by

20   defense counsel and then send it to chambers for entry.

21          If there is anything further at this time from the

22   government.

23          MR. SNELL:  Not from the government.  Thank you, your

24   Honor.

25          THE COURT:  Anything further from the defense,

1  Mr. Briskman?

2          MR. BRISKMAN:  No, not today, Judge.  Thank you.

3          THE COURT:  Thank you, Mr. Briskman.

4          Anything further from pretrial?

5          MS. BERT:  No, your Honor.  Thank you.

6          THE COURT:  Thank you, everyone, for your time.  We're

7  adjourned.

8        (Which concluded the proceedings.)

9                          CERTIFICATE

10          I certify that the foregoing is a correct transcript

11  from the digital recording of proceedings in the above-entitled

12  matter to the best of my ability, given the limitation of using

13  a digital-recording system.

14

15

16  */s/Pamela S. Warren*                    May 19, 2025
    Official Court Reporter - Retired             Date
17  United States District Court
    Northern District of Illinois
18  Eastern Division

19

20

21

22

23

24

25