UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JOSE GREGORIO SOSA CARDONA

No. 25 CR 129

Judge Sunil Harjani

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ANDREW S. BOUTROS, and defendant JOSE GREGORIO SOSA CARDONA, and his attorneys, JACOB BRISKMAN and JOSHUA ADAMS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The superseding indictment in this case charges defendant with conspiracy to defraud the United States and commit offenses against the United States namely, violation of Title 18, United States Code, Section 1546(a), ¶¶ 1 and 4, in violation of Title 18, United States Code, Section 371 (Count 1); fraud in visa/immigration applications, in violation of Title 18, United States Code, Section 1546(a), ¶ 4 (Counts 2-5); use of a false document,  in violation of Title 18, United States Code, Section 1001(a)(3) (Count 6); making a false statement, in violation of Title 18, United States Code, Section 1001(a)(1) (Count 7); possession of child pornography involving a minor who had not attained 12 years of age, in violation of

Title 18, United States Code, Section 2252A(a)(5)(B) and (b)(2) (Count 8); tax fraud, in violation of Title 26, United States Code, Section 7206(1) (Counts 9-12); and obstruction of justice, in violation of Title 18, United States Code, Section 1512(b)(2)(B)(i) (Count 13).

3.     Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment: Count One, which charges defendant with conspiracy to defraud the United States and commit offenses against the United States namely, violations of Title 18, United States Code, Section 1546(a), ¶¶ 1 and 4, all in violation of Title 18, United States Code, Section 371; Count Eight, which charges defendant with possession of child pornography involving a prepubescent minor and a minor who had not attained 12 years of age, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and (b)(2); and Count Twelve, which charges defendant with signing a tax return under penalty of perjury knowing that it contains false information, in violation of Title 26, United States Code, Section

2

7206(1). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One, Eight, and Twelve of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.      With respect to Count One of the superseding indictment:

Beginning not later than March 2020, and continuing until at least November 2024, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant conspired with employees, including Employee A and Employee B, and with others, (a) to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of United States Citizenship and Immigration Services ("USCIS"), an agency of the United States, in administering and executing United States immigration laws and regulations; and (b) to commit offenses against the United States, namely: (i) to knowingly obtain Form I-94s, which were documents prescribed by statute and regulation as evidence of authorized stay in the United States, knowing them to have been procured by means of any false claim and statement and to have otherwise been procured by fraud and unlawfully, in violation of Title 18, United States Code, Section 1546(a), ¶ 1; and (ii) to knowingly make under

3

oath or subscribe as true under penalty of perjury under Title 28, United States Code, Section 1746, a false statement with respect to a material fact in any application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, and knowingly present any application, affidavit, and other document which contains any such false statement and fails to contain any reasonable basis in law and fact, namely Form I-485s, Form I-589s, and accompanying affidavits and other documentation, in violation of Title 18, United States Code, Section 1546(a), ¶ 4.

More specifically, starting not later than 2017, defendant conducted an immigration services business whereby he represented or otherwise assisted individuals seeking asylum, immigrant visas, lawful permanent residence cards, and other immigration benefits from the United States. Defendant charged a fee for his services, usually around $5,000 dollars for an asylum application in year 2024, and falsely represented to clients and USCIS employees that he was an attorney, when, in reality, he was not. Defendant conducted his business through names including Delta Global Services Inc. ("Delta Global"), Sin Fronteras, and Enlace. Defendant filed more than 600 asylum applications for clients.

### Asylum Applications

Throughout the time-period that defendant's business operated, a foreign national seeking asylum status in the United States was required to show that they had suffered persecution in their country of origin on account of race, religion,

4

nationality, political opinion, or membership in a particular social group, or presently had a well-founded fear of persecution if they were to return to such country. An alien present in the United States seeking affirmative asylum was required to complete a Form I-589, Application for Asylum and for Withholding of Removal, which could be submitted to USCIS. Form I-589 required a detailed and specific account of the basis supporting the applicant's claim for asylum. If Form I-589 was prepared by someone other than the applicant or the spouse, parent, or child of the applicant, such as an attorney or accredited representative, the preparer was required to set forth their name and address on the form. The applicant was required to sign the Form I-589 under penalty of perjury, certifying that the application and evidence submitted with the application were true and correct. The preparer was required to sign the Form I-589 certifying that the responses within the application were all based on information of which the preparer had knowledge or information.

After a Form I-589 was submitted to USCIS, the applicant would be interviewed by a USCIS officer (an "asylum officer") to determine whether the applicant qualified for asylum. At or before the interview, the applicant could present witnesses or documentation in support of their asylum claim. Types of documentation often submitted in support of an asylum claim included photographs, police reports from the applicant's home country, medical reports from the applicant's home country, political party membership letters from the applicant's home country, and other documents in the applicant's native language. If a support document was not

in the English language, a translation of the document, with certification, was required to accompany the document.

If an applicant was granted asylum, they received a completed Form I-94 that reflected that USCIS had granted them asylum status. Certain qualifying family members were eligible for derivative asylum status based upon their relationship to the principal petitioner filing for asylum status.

An individual who had been granted asylum status could apply for lawful permanent resident status in the United States by filing a Form I-485, Application to Register Permanent Residence or Adjust Status, with USCIS. An applicant who submitted a Form I-485 was required to sign the application, certifying under penalty of perjury that the information contained in the application, and any document submitted with the application, was complete, true, and correct.

In conducting his immigration services business, defendant routinely created, and caused his coconspirators and employees to create, fictitious background narratives to support clients' applications for asylum. For example, defendant would interview a client to obtain basic background information, such as where they had lived and when, and defendant or Individual B would thereafter conduct internet searches for historical events that had occurred in geographic proximity to the client, such as a protest against the government of Nicholas Maduro. Defendant, or Individual B operating at defendant's direction, would then draft a narrative for the client falsely representing that the client attended the historical event(s) and suffered

6

persecution as a result, such as a physical attack by police. To corroborate these false narratives, defendant used Microsoft Word to create, among other things, fraudulent police reports, political party letters, and medical records that purported to have originated in Venezuela (and in limited circumstances, other countries) years before the submission of the clients' asylum applications. The Word copies of these fraudulent documents were saved on the computer systems of Delta Global, and accessible to defendant, as well as to Individual B, who could access them through a MacBook computer provided to him (Individual B) as an employee of Delta Global.

After defendant filed fraudulent asylum applications for his clients, he caused and encouraged them to testify falsely at interviews with asylum officers concerning the clients' bases for asylum and the truthfulness of their applications.

Client S.G. was one of defendant's clients who paid defendant to represent him in filing for immigration benefits. On or about July 13, 2020, defendant caused a Form I-589 containing false information and an accompanying false asylum narrative corroborated by fabricated support documents, including a fraudulent law enforcement report and fraudulent political party letter, to be submitted to USCIS on behalf of Client S.G. Defendant caused the fraudulent support documents to be created, including when, on June 30, 2020, defendant caused a Microsoft Word document to be printed that purported to be an official law enforcement report from Venezuela dated May 22, 2017, in order to falsely corroborate the narrative in Client S.G.'s asylum application. On August 25, 2021, Client S.G. appeared before an

7

asylum officer and presented false information consistent with the fraudulent asylum application and supporting documents that defendant caused to be prepared and submitted to USCIS.

On or about September 27, 2022, defendant caused a Form I-485 application seeking lawful permanent resident status to be submitted to USCIS on behalf of Client S.G. The application contained false information, namely, representations that Client S.G. had never submitted fraudulent or counterfeit documentation to any U.S. Government official to obtain or attempt to obtain any immigration benefit, and that Client S.G. had never lied or misrepresented any information on an application or petition to obtain any kind of immigration benefit. Defendant caused the application to be prepared, and he knew the representations within it to be false, as he had assisted Client S.G. in making fraudulent representations in connection with his earlier asylum application.

Defendant acknowledges that he caused more than 100 asylum applications to be submitted to USCIS with counterfeit and fraudulent support documents.

<u>With respect to Count Eight of the superseding indictment</u>:

On or about November 21, 2024, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant knowingly possessed material, namely, the following:

| Item | Serial Number |
|---|---|
| Seagate Backup Plus Portable hard drive, model SRD0VN3 | NAB9DYJ3 |
| Seagate Backup Plus Portable hard drive, model SRD00F1 | NA9EVKGY |
| Seagate Backup Plus Portable hard drive, model SRD00F1 | NA7QF8V3 |
| Apple iMac desktop computer, model A2438 | H4TFR1CJQ6W8 |

(collectively, the "Electronic Devices") that each contained an image of child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), involving a prepubescent minor and a minor who had not attained 12 years of age, such image having been shipped and transported in interstate and foreign commerce by any means, including by computer, and such image having been produced using materials that had been shipped and transported in interstate and foreign commerce by any means, including by computer.

More specifically, in November 2024, defendant conducted his immigration services business from a commercial premises in Lisle, Illinois. On November 21, 2024, while defendant was in his personal office in Lisle, Illinois, he possessed the Electronic Devices, which collectively contained more than 1,000 images of child pornography, including material depicting real children engaged in sexually explicit conduct that defendant obtained by use of the Internet. Defendant knew that the child pornography material in his possession depicted minors engaged in sexually

explicit conduct, including prepubescent minors, and minors under the age of twelve years old.

Defendant possessed, among other images, the following: (1) a video named (PHANT)(pthc)(otstoi)(toddler_suck)_7Yo_and_papa.mp4 depicting a partially naked prepubescent female subjected to an adult penis being inserted into her mouth multiple times; (2) a video named (Phant)_--_Directo_Al_Trasero_De_Negrita_De_10.mp4 depicting partially naked prepubescent female subjected to anal sex by an unidentified adult male; (3) a video named Mel 5yo anal and footjob.mp4 depicting a prepubescent female victim being subjected to various sexual acts by an unidentified adult male; and (4) a video named VIDEO0170-T-cum.mp4 depicting a prepubescent naked male being subjected to genital manipulation by an unidentified adult. In total, defendant possessed approximately 2,877 pictures and videos of minors engaged in sexually explicit conduct on the Electronic Devices.

Defendant acknowledges that he used each of the Electronic Devices for the possession of the child pornography material described above and that each of the Electronic Devices qualifies as a "computer" as defined in Title 18, United States Code, Section 1030(e)(1). Defendant also acknowledges that the child pornography material he possessed had been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

      b.    <u>With respect to Count Twelve of the superseding indictment:</u>

On or about March 10, 2024, in the Northern District of Illinois, Eastern Division, defendant willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments) for tax year 2023, which was verified by a written declaration made under penalty of perjury and was filed with the Internal Revenue Service (IRS), which return defendant did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on Form 1040, line 25a, that $87,313 in federal income tax had been withheld, when defendant knew that this amount was false because it included $1,330 falsely reported in a Form W-2 issued by Delta Languages LLC that had not been withheld or paid over to the IRS, and $81,320 falsely reported in a Form W-2 issued by Delta Global Solutions Inc. that had not been withheld or paid over to the IRS.

More specifically, during calendar years 2020 through 2023, defendant issued Forms W-2 contained false information to himself from Delta Global Solutions Inc. and Delta Languages LLC, reporting federal tax withholdings in amounts that had been neither withheld from defendant's pay nor paid over to the IRS. Defendant then used the false Forms W-2 to fraudulently claim refundable credits on his Form 1040 which significantly reduced his tax liabilities. The conduct resulted in a federal tax loss of approximately $100,568 for Tax Year 2023.

7.     Defendant also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline § 1B1.3:

11

*Tax Charges Relating to Defendant's Business*

Defendant was the sole owner of Delta Global. Between 2020 and 2023, Delta Global employed approximately 16 different individuals. As an employer, Delta Global was required to withhold federal income tax, Medicare tax, and Social Security tax ("payroll taxes") from its employees' wages. It was also required to truthfully account for the payroll taxes withheld by filing an employer's quarterly tax return (Form 941) and pay over the withholdings to the IRS on a quarterly basis. Because defendant ran Delta Global and controlled its finances, he was responsible for making sure these actions were achieved. Defendant caused payroll taxes to be withheld from his employee's wages, but he failed to pay them over to the IRS and failed to file accurate Forms 941 with the IRS for every quarter of Tax Years 2020 through 2023.

Defendant's failure to account for and pay over the payroll taxes was not done in error. Defendant had funds available to pay the payroll taxes. Instead, he used these funds to make payments on multiple motor vehicles, including two Tesla vehicles, frequent domestic and internation travel, and multiple real properties. Defendant knew that the withheld tax funds were not his to keep, but he retained them and converted them to his own use. The unpaid trust fund portion of payroll taxes for years 2020 through 2023 are as follows:

| Quarter Ended | Trust Fund Portion of Employment Taxes Due |
|---|---|
| 3/31/2020 | $2,915.44 |

12

| | |
|---|---|
| 6/30/2020 | $2,723.46 |
| 9/30/2020 | $3,867.24 |
| 12/31/2020 | $6,875.75 |
| 3/31/2021 | $988.79 |
| 6/30/2021 | $5,525.46 |
| 9/30/2021 | $4,796.68 |
| 12/31/2021 | $5,612.89 |
| 3/31/2022 | $5,880.81 |
| 6/30/2022 | $5,754.25 |
| 9/30/2022 | $6,408.61 |
| 12/31/2022 | $8,852.34 |
| 3/31/2023 | $10,330.59 |
| 6/30/2023 | $9,677.24 |
| 9/30/2023 | $9,512.28 |
| 12/31/2023 | $8,958.77 |
| **Total** | **$98,680.60** |

Defendant also willfully filed false Forms 1040 for himself for tax years 2020 through 2023, as discussed in the factual basis for Count Twelve above. The tax due and owing for each of these years is as follows:

| Tax Year | Tax Due and Owing |
|---|---|
| 2020 | $35,520 |
| 2021 | $9,867 |
| 2022 | $71,606 |
| 2023 | $100,568 |
| **Total** | **$217,561** |

*Obstruction*

On November 21, 2024, federal agents executed search warrants at Delta Global's offices in Lisle, Illinois. Defendant was present in his locked office when

13

agents arrived and announced their presence. Individual B was not working that day and was at home, with his Delta Global MacBook. After the search had begun, defendant contacted Individual B multiple times between November 21 and 26, 2024, by voice call and by text message, inquiring about, and instructing Individual B to delete, the MacBook.

*Defendant's Application for Citizenship*

On November 15, 2022, defendant caused to be filed with USCIS his N-400 Application for Naturalization. On October 16, 2024, defendant appeared at USCIS offices in Chicago for his interview concerning his N-400 application. During the interview, the hearing officer reviewed each of the answers in the N-400 application with defendant, and defendant affirmed his answers to each of the questions. In his N-400, and during his interview, defendant falsely represented the following for the purpose of trying to obtain U.S. citizenship, that:

- He had never claimed to be a U.S. citizen in writing or in any other way;
- He had never committed, assisted in committing, or attempted to commit a crime or offense for which he was not arrested;
- He had never been married to more than one person at the same time; and
- He had not ever given any U.S. Government officials any information or documentation that was false, fraudulent, or misleading.

14

Defendant was aware in making these representations on November 15, 2022, and October 16, 2024, that they were false.

Defendant had represented that he was a U.S. citizen on myriad loan applications, including a mortgage loan application for his primary residence and an Economic Injury Disaster Loan he obtained for Delta Global.

Defendant knew he had committed crimes or offenses for which he had not been arrested at the time of his application submission and later interview, including, but not limited to: his continuing immigration fraud conspiracy; possession of child pornography; filing false tax returns and failing to pay over payroll taxes; and wire fraud with respect to numerous loan and credit applications containing Social Security Numbers not assigned to defendant, and false employment and income information.

Defendant knew that when he married his current spouse on July 3, 2015, he remained married to his prior spouse. Defendant and his prior spouse filed their *pro se* petition for dissolution marriage in DuPage County, Illinois on July 28, 2015.

Defendant knew that he had previously given U.S. Government officials information or documentation that was false, fraudulent, or misleading. He did this through, among other things, his continuing immigration fraud conspiracy, part of which included his appearing at USCIS offices on November 9, 2021, and April 17, 2024, when he appeared and presented himself as an attorney, utilizing a fraudulent Ohio Attorney Registration Card bearing his name.

15

## Maximum Statutory Penalties

8.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.     Count One carries a maximum sentence of five years' imprisonment. Count One also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

b.     Count Eight carries a maximum sentence of 20 years' imprisonment. Count Eight also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Eight, the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

c.     Count Twelve carries a maximum sentence of 3 years' imprisonment. Count Twelve also carries a maximum fine of $250,000, or twice the gross gain or gross loss from the offense. Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500. Defendant further understands that with respect to Count Twelve the judge also may impose a term of supervised release of not more than one year.

d.     Defendant further understands that the Court must order restitution to the victims of the offenses in an amount determined by the Court.

16

e.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

f.     Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 28 years' imprisonment. In addition, defendant is subject to a total maximum fine of $600,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater, mandatory costs of prosecution, a period of supervised release, and special assessments totaling $300, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

9.     Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities

17

among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.     For purposes of calculating the Sentencing Guidelines, the government's position as of the date of this Agreement is as follows:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 1, 2024 Guidelines Manual.

b.     **Offense Level Calculations**.

**Count One**

i.     Pursuant to Guideline § 2X1.1(a), the base offense level for a conspiracy is "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty."

ii.     The base offense level for violation of 18 U.S.C. § 1546(a) is 11, pursuant to Guideline § 2L2.1(a).

iii.     Pursuant to Guideline § 2L2.1(b)(2)(C), the offense level is increased by 9 levels because the offense involved 100 or more documents.

iv.      Pursuant to Guideline § 3B1.1(a), the offense level is increased by 4 levels because defendant was a leader or organizer of criminal activity involving 5 or more participants.

v.      Pursuant to Guideline § 3B1.3, the offense level is increased by 2 levels because defendant abused a position of trust.

vi.      Pursuant to Guideline § 3C1.1, the offense level is increased by 2 levels for defendant obstructing or impeding the investigation.

**Count Eight**

vii.      The base offense level is 18, pursuant to Guideline § 2G2.2(a)(1).

viii.      Pursuant to Guideline § 2G2.2(b)(2), the offense level is increased by 2 levels because defendant possessed child pornography that involved a prepubescent minor who had not attained the age of 12 years.

ix.      Pursuant to Guideline § 2G2.2(b)(4), the offense level is increased by 4 levels because defendant possessed child pornography that portrays sadistic or masochistic conduct or sexual abuse or exploitation of an infant or toddler.

x.      Pursuant to Guideline § 2G2.2(b)(6), the offense level is increased by 2 levels because the offense involved the use of a computer.

xi.      Pursuant to Guideline § 2G2.2(b)(7)(D), the offense level is increased by 5 levels because the offense involved possession of more than 600 images of child pornography.

19

### Count Twelve

   xii.  The base offense level is 18, pursuant to Guideline §§ 2T1.1(a)(1), 3D1.3(a) and 2T4.1(G), as the tax loss for the offense and related relevant conduct is greater than $250,000 and less than $550,000.

### Grouping

   xiii.  Pursuant to Guideline § 3D1.2, Counts One, Eight, and Twelve each form a separate group. Pursuant to Guideline § 3D1.4, Count Eight, which is an offense level of 31, is one Unit, and Count One, which is a level 28, is Unit, as it has an offense level between 1 to 4 levels less than Count Eight. Count Twelve is more than 9 levels less than Count Eight and is therefore disregarded pursuant to Guideline § 3D1.4(c). With two total units, two levels is added to the group with the highest offense level (Count Eight), for a total offense level of 33.

   xiv.  The government understands that defendant will truthfully admit the conduct comprising the offenses of conviction and truthfully admit or not falsely deny any additional relevant conduct for which the defendant is accountable under Guideline § 1B1.3. Therefore, based upon facts now known to the government, defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the

Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

xv.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal one and defendant's criminal history category is I:

i.     On or about November 25, 2013, defendant was convicted of Theft by Unlawful Taking in the Court of Common Pleas of Bucks County, Pennsylvania, and sentenced to 18 months' probation. Pursuant to Guideline § 4A1.1(c), defendant receives 1 criminal history point.

d.     **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government anticipates the offense level to be 30 which, when combined with the anticipated

21

criminal history category of I, results in an anticipated advisory sentencing guidelines range of 97 to 121 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.     Defendant and his attorney and the government acknowledge that the guidelines calculations set forth in this Agreement are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands the above calculations are based on information now known to the government and that further review of the facts or applicable legal principles may lead the government to change its position on the guidelines calculations. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the defendant's, the probation officer's, or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of a change in the government's position on the guideline calculations or the Court's rejection of these calculations.

11.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by the government prior to sentencing. The government may correct these errors by a statement to the Probation Office or the

22

Court, setting forth any changes in the government's position regarding the guidelines calculations. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea on the basis of such corrections.

### Agreements Relating to Sentencing

12.    Each party is free to recommend whatever sentence it deems appropriate.

13.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

14.    Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 2259, the Court must order restitution for Count Eight in the full amount of the losses of any victim of defendant's offense, as the terms "victim" and "loss" are defined in that section. The amount of restitution shall be determined by the Court at sentencing.

15.    Defendant also acknowledges that in addition to restitution due pursuant to Title 18, United States Code, Section 2259, he agrees to pay restitution arising from Count Eight, and associated relevant conduct, to the Internal Revenue

Service pursuant to Title 18, United States Code, Section 3663(a)(3), in the amount of $316,241.60.

16.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

17.     Defendant agrees to pay the special assessment of $300 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), and Title 31, United States Code, Sections 3711, 3716, and 3728, notwithstanding any payment schedule set by the Court. In the event of the death or dissolution of, or the government's inability to locate the named recipient(s) of restitution in the Judgment and Commitment Order, the defendant agrees to not oppose efforts by the government to obtain an order substituting as payee a representative of the victim's estate, another family member, or any other person or successor entity appointed as suitable by the court, or the Crime Victims Fund.

19.     After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment, as well as the indictment as to defendant.

## Forfeiture

20.     Defendant understands that, by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property any property involved in the offense.

21.     Defendant agrees to forfeiture of the following specific property to the United States:

| Item | Serial Number |
|---|---|
| Seagate Backup Plus Portable hard drive, model SRD0VN3 | NAB9DYJ3 |
| Seagate Backup Plus Portable hard drive, model SRD00F1 | NA9EVKGY |
| Seagate Backup Plus Portable hard drive, model SRD00F1 | NA7QF8V3 |
| Apple iMac desktop computer, model A2438 | H4TFR1CJQ6W8 |

In doing so, defendant admits that the property described above contains visual depictions described in Title 18, United States Code, Section 2252A; and is property used and intended to be used to commit and to promote the commission of a violation of Title 18, United States Code, Section 2252A, as alleged in the superseding indictment. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law.

25

22.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

23.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

24.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 25 CR 129.

25.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

26.     Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant and his spouse or defendant's partnership or corporations. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

<b>Waiver of Rights</b>

27.     Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

    a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove

prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

28

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii. With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

28. Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

29. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall endeavor to ensure that the relevant facts and sentencing factors, as

29

applied to the facts, are brought to the District Court's attention fully and accurately, including facts related to the defendant's criminal conduct and related conduct, and any relevant information concerning the defendant's background, character, and conduct that the District Court may consider under 18 U.S.C. § 3661 in imposing a sentence.

30.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

31.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's

sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

32.     Defendant understands that pursuant to Title 18, United States Code, Sections 3583(d) and 4042(c), the Court must order as an explicit condition of supervised release that defendant register as a sex offender in compliance with the requirements of the Sex Offender Registration and Notification Act. Defendant also understands that he will be subject to federal and state sex offender registration requirements independent of supervised release, that those requirements may apply throughout his life, and that he may be subject to state and federal prosecution for failing to comply with applicable sex offender registration laws. Defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his duties to comply with current or future sex offender registration laws. Defendant nevertheless affirms that he wants to plead guilty regardless of any sex offender registration consequences that his guilty plea may entail.

33.     Defendant agrees to participate in psychological counseling and sex offender treatment as directed by the Probation Office as a condition of any sentence of probation or supervised release imposed.

31

## **Other Terms**

34. Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

35. Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant and his spouse or defendant's partnerships or corporations. Nothing in this paragraph or the preceding paragraph precludes defendant and his spouse or defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

32

36.    Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including one or more offenses to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

## Conclusion

37.    Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

38.    Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or

may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

39.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

40.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

41.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _November 20, 2025_

| | |
|---|---|
| MICHELLE PETERSEN Digitally signed by MICHELLE PETERSEN Date: 2025.11.02 21:34:37 -06'00'   for ASB | |
| ANDREW S. BOUTROS | JOSE GREGORIO SOSA CARDONA |
| United States Attorney | Defendant |
| JEFFREY S. SNELL | JACOB BRISKMAN |
| Assistant U.S. Attorney | Attorney for Defendant |
| | JOSHUA ADAMS |
| | Attorney for Defendant |